UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES T. BYRNE, | : | |
| Petitioner, | : | Civ. No. 20-12268 (RBK) |
| v. | : | |
| DAVID ORTIZ, | : | **OPINION** |
| Respondent. | : | |

**ROBERT B. KUGLER, U.S.D.J.**

Petitioner, an inmate at FCI Fort Dix, in Fort Dix, New Jersey, filed a counseled and unsigned[1] Petition under 28 U.S.C. § 2241. (ECF No. 1). Respondent filed an Answer, (ECF No. 6), and Petitioner's counsel filed a stunningly deficient[2] Reply, (ECF No. 7). For the reasons discussed below, the Court will dismiss the Petition without prejudice for failure to exhaust.

## I.   BACKGROUND

This case arises from the conditions of Petitioner's incarceration at Fort Dix and the COVID-19 pandemic. By way of background, in 2010, in the Southern District of Florida, Petitioner pleaded guilty to one count of producing child pornography, in violation of 18 U.S.C. § 2251(a). Petitioner had engaged in "sexual activity" with a 12-year-old "mentally handicapped

---

[1] Federal Rule of Civil Procedure 11(a) provides: "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented." In the interest of judicial economy, and because the Court will dismiss this matter for other reasons, the Court will excuse this failure.

[2] In response to the detailed Answer, Petitioner's counsel submitted a four-paragraph memorandum reply that does not address the issue of exhaustion or the merits of the Fifth and Eighth Amendment claims at issue in this case.

The Reply merely clarifies that Petitioner is not pursuing a claim under the Coronavirus Aid, Relief, and Economic Security Act, and then lists some general legal principles. Such a submission is disappointing given the seriousness of the allegations in this case.

child with an approximate IQ of 55 for the purpose of producing visual images of that sexual activity." (*United States v. Byrne*, No. 09-cr-14059 (S.D. Fla.), ECF No. 36 at 1).  The Southern District of Florida entered judgment in June of 2010, sentencing Petitioner to, among other things, 360 months in prison.

According to Petitioner, Fort Dix houses him in unsafe conditions in light of the COVID-19 pandemic.  Petitioner contends that he is a vulnerable individual because he is 80 years old and suffers from diabetes and high blood pressure, and that he is immunosuppressed from receiving chemotherapy for Non-Hodgkin's Lymphoma.  (ECF No. 1, at 22).

As for the conditions at Fort Dix, Petitioner contends that the prison lacks adequate cleaning supplies and protective gear, and that staff have not properly implemented or enforced the Center for Disease Control's recommendations.  (*Id*. at 20–21).  Petitioner also alleges that the structure of Fort Dix and how it houses its prisoners make social distancing impossible. (*Id*.).  In response, Respondent extensively details the Bureau of Prisons' ("BOP") efforts, over several months, to improve its facilities and prevent the spread of COVID-19 at Fort Dix.  (ECF No. 6, at 5–14).  Respondent also provides updated information on the current conditions at Fort Dix. (*Id*.).

Petitioner concedes that he has never attempted to file an administrative grievance regarding any of these issues, (ECF No. 1, at 4–6), and the BOP's records confirm that failure. (ECF No. 6-3, at 2).

On or about September 2, 2020, Petitioner filed the instant Petition, arguing that the conditions of his confinement violate his rights under the Fifth and Eighth Amendments.  In terms of relief, Petitioner seeks his immediate release to home confinement and an injunction to order "Respondent to mitigate the serious risks" related to Covid-19 to those who remain at FCI Fort Dix.  (ECF No. 1, at 33).

Respondent filed an Answer, (ECF No. 6), and Petitioner filed a Reply, (ECF No. 7). Respondent contends that this Court lacks jurisdiction under § 2241 to hear Petitioner's claims. In the alternative, Respondent contends that the Court should deny the Petition for Petitioner's failure to exhaust his administrative remedies and that in any event, Petitioner's claims lack merit.

## II.   STANDARD OF REVIEW

"Habeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and set forth "facts supporting each of the grounds thus specified." 28 U.S.C. § 2254 Rule 2(c) (amended Dec. 1, 2004), applicable to § 2241 petitions through Habeas Rule 1(b). A court addressing a petition for writ of habeas corpus "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled there." 28 U.S.C. § 2243.

Thus, "[f]ederal courts . . . [may] dismiss summarily any habeas petition that appears legally insufficient on its face." *McFarland*, 512 U.S. at 856. More specifically, a district court may "dismiss a [habeas] petition summarily when it plainly appears from the face of the petition and any exhibits . . . that the petitioner is not entitled to relief." *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996).

## III.   DISCUSSION

### A. Jurisdiction Under § 2241

First, Respondent argues that this Court lacks jurisdiction under § 2241 because Petitioner's claims do not fall within the core of habeas. Under § 2241(c)(3), "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . . He is in custody in violation of the Constitution or laws or treaties of the United States." In other words, a petitioner must satisfy: "the status

3

requirement that the person be 'in custody,' and the substance requirement that the petition challenge the legality of that custody on the ground that it is 'in violation of the Constitution or laws or treaties of the United States.'" *See, e.g.*, *Wilson v. Montgomery Cty., Pa.*, No. 09-0371, 2009 WL 1322362, at *4 (D.N.J. May 12, 2009) (quoting 28 U.S.C. § 2241(c)(3)) (citing *Maleng v. Cook*, 490 U.S. 488, 490 (1989)).

"Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 [or *Bivens*] action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citation omitted). "[U]nless the claim would fall within the 'core of habeas' and require sooner release if resolved in the plaintiff's favor, a prison confinement action . . . is properly brought under § 1983" or a *Bivens* action. *Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002). Stated differently, "'when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction,' a civil rights action is the proper method to seek relief." *Chaparro v. Ortiz*, No. 20-5272, 2020 WL 4251479, at *2 (D.N.J. July 24, 2020) (quoting *Leamer*, 288 F.3d at 542).

Typically, § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). "Examples of habeas claims that affect the duration of confinement include parole challenges, loss of good time credits and incorrect sentence calculations." *Wragg v. Ortiz*, No. 20-5496, ____ F. Supp. 3d ____, 2020 WL 2745247, at *14 (D.N.J. May 27, 2020); *see also Chaparro*, 2020 WL 4251479, at *2.

In *Wragg*, after discussing the general differences between habeas and civil rights actions, Judge Bumb observed that the Supreme Court, in *dicta*, left open the possibility of prisoners

4

challenging the conditions of their confinement, in exceptional circumstances, through a habeas petition. *Wragg*, 2020 WL 2745247 at *15 (citing *Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979); *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973)).

Until recently, "neither the Supreme Court nor the Third Circuit ha[d] ever recognized any exceptional circumstance that would allow Petitioners to challenge their conditions of confinement in a habeas petition." *See id*. (citing *Muhammad*, 540 U.S. at 751 n.1).

In *Hope v. Warden York Cty. Prison*, however, the Third Circuit "recognized the viability of conditions of confinement claims through a § 2241 petition," under certain circumstances. *Guilherme B.V. v. Tsoukaris*, No. 20-11734, 2020 WL 5525512, at *5 (D.N.J. Sept. 14, 2020) (citing *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 324–25 (3d Cir. 2020)).  In that case, the Third Circuit found that *immigration detainees* could challenge the conditions of their confinement under § 2241, due to "the extraordinary circumstances that existed in March 2020 because of the COVID-19 pandemic." *Hope*, 972 F.3d at 324–25.  In recognizing that claim, the Court cautioned that it was "not creating a garden variety cause of action," but one specific to those exceptional circumstances. *Id*. at 324.

In light of *Hope*, and because this Court intends to dismiss the Petition on other grounds, the Court will assume, *without deciding*, that it has jurisdiction under § 2241, to consider a federal prisoner's COVID-19 related conditions of confinement claim.

### B. Failure to Exhaust

That said, the Court will deny the Petition because Petitioner has failed to exhaust his administrative remedies.[3]  Although 28 U.S.C. § 2241 contains no statutory exhaustion

---

[3] The BOP Administrative Remedy Program, 28 C.F.R. § 542.10 *et seq*., provides for review of inmate grievances at the institutional, Regional, and Central Office levels.  Inmates must first present grievances informally, and then if dissatisfied with the informal resolution, the inmate must submit a written administrative remedy request. 28 C.F.R. §§ 542.13–542.14.  If the inmate is not

5

requirement, a federal prisoner may not ordinarily bring a § 2241 petition, challenging the execution of his sentence, until he has exhausted all available administrative remedies. *See, e.g.*, *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000).

Courts require exhaustion for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 761–62 (3d Cir. 1996); *see also Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).

Nevertheless, exhaustion is not required where it would not promote these goals. *See, e.g.*, *Gambino*, 134 F.3d at 171 (finding that exhaustion is not required where petitioner demonstrates futility); *Lyons*, 840 F.2d at 205 (noting that courts may excuse exhaustion where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm").

With those principles in mind, Petitioner concedes that he has not exhausted his administrative remedies, (ECF No. 1, at 4–6), and according to the BOP's records, Petitioner has never filed an administrative grievance regarding these claims. (ECF No. 6-3, at 2).

Consequently, Petitioner asks the Court to excuse that failure in light of the COVID-19 pandemic. "Petitioner essentially argues that the exhaustion process is futile because the process

---

satisfied with the Warden's response, he may appeal to the Regional Director, and then to the Central Office, General Counsel. 28 C.F.R. § 542.15(a). An appeal to the General Counsel is the final administrative appeal. *Id.* The General Counsel shall respond to the final appeal within 40 calendar days, and if the inmate receives no response within that time, he may consider it a denial. 28 C.F.R. § 542.18.

takes too long," and because he does not believe it could result in the desired relief of home confinement. (ECF No. 1, at 6); *see Chaparro*, 2020 WL 4251479, at *5.

In other COVID-19 related cases, this Court and the Third Circuit have rejected such arguments. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *Chaparro*, 2020 WL 4251479, at *5, *Furando v. Ortiz*, No. 20-3739, 2020 WL 3264161, at *3 (D.N.J. June 17, 2020). In *Raia*, where a prisoner sought immediate compassionate release from prison based on COVID-19 conditions, the Third Circuit required the exhaustion of administrative remedies. *Raia*, 954 F.3d at 597.

The Third Circuit reasoned that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Id.*; *Chaparro*, 2020 WL 4251479, at *5. As a result, this Court concluded, that at "this time, the threat of COVID-19 at FCI Fort Dix does not make exhaustion of administrative remedies futile." *Chaparro*, 2020 WL 4251479, at *5 (quoting *Furando*, 2020 WL 3264161, at *3).

Further, "Petitioner's case fits squarely within the parameters of the purposes of exhaustion." *Cf. Furando*, 2020 WL 3264161, at *3. First, the fact that "Petitioner disputes the BOP's efforts in controlling the spread" of COVID-19 shows the need for "Petitioner to attempt to resolve this at the administrative level first" and develop a factual record. *Chaparro*, 2020 WL 4251479, at *5. "Second, Petitioner could potentially obtain relief from the BOP without using judicial resources." *Furando*, 2020 WL 3264161, at *3. Finally, the BOP should have an opportunity to correct their own mistakes. *Id*.

7

Indeed, Respondent extensively details the BOP's efforts, over several months, to improve its facilities and prevent the spread of COVID-19 at Fort Dix. (ECF No. 6, at 5–14). As mentioned above, however, Petitioner's counsel did not address those improvements, or how they affect Petitioner's conditions of confinement claim, anywhere in his Reply. (ECF No. 7).

Similarly, Petitioner fails to mention exhaustion anywhere in his Reply, or address his likelihood of experiencing irreparable harm in light of the improvements at Fort Dix. (*See id*.). Nor does the Reply address Petitioner's failure to use the three-day emergency grievance procedure that is available when conditions threaten "the inmate's immediate health or welfare." *See* 28 C.F.R. § 542.18 ("If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing.").

Accordingly, as Petitioner has not shown that exhaustion would be futile or that requiring exhaustion would subject Petitioner to irreparable injury, the Court will not excuse Petitioner's failure to exhaust. Consequently, the Court will dismiss the Petition for Petitioner's failure to exhaust his administrative remedies.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss the Petition without prejudice for failure to exhaust. An appropriate Order follows.

Dated: November 25, 2020         s/Robert B. Kugler
                                 ROBERT B. KUGLER
                                 United States District Judge